BOYD, *Appellant*, v. MAMMOTH SPRING IMPROVEMENT
AND WATER POWER COMPANY.

### Division One, February 9, 1897.

1. **Public Land**: ENTRY: PATENT: EQUITABLE TITLE.  Under regulations of the United States land office, an entry was permitted to stand for many years in the name of the assignee of an original bounty land warrant which (after the entry) had been canceled for forgery in the assignment.  Then an intending purchaser applied to enter the same land, and the government officers accepted payment under the original entry, and issued a patent to the purchaser in the name of the original locator; *held*, that the purchaser thus acquired an equitable title which the court would perfect by a decree for the legal title.

2. ———: LAND WARRANT: ASSIGNMENT: PATENT.  Where a duplicate land warrant has been issued by the land office authorities, the original warrant becomes void, and no assignment thereof may be the basis for a patent without proof of good faith and of value in the assignment.

3. ———: PATENT.  It is assumed that a United States patent for land, issued after the death of the patentee, inures to the benefit of his heirs.

4. ———: RESULTING TRUST: PATENT.  Where one furnishes the consideration for the purchase of land and the title is taken in the name of another, the latter is the trustee of a resulting trust for the former, in the absence of evidence of a different intent.  A title acquired by government patent is subject to the operation of the above rule.

5. ———: EJECTMENT.  An action of ejectment may be maintained in Missouri on an entry or bounty land warrant location, as against one not having a better title.

*Appeal from Howell Circuit Court.*—HON. W. N.
EVANS, Judge.

AFFIRMED.

*L. B. Woodside* for appellant.

(1)  An entry or land warrant location with the register or receiver of the land office is sufficient upon

which a plaintiff can recover in ejectment, whether patented or not; and even if the patent was void for having been issued after the death of Tobler, the entry made by him at the land office was sufficient to authorize his heirs or their assigns to recover in ejectment. R. S. 1889, sec. 4627. (2) Where a patent for public lands has been issued to a person who is dead, the title to the land inures to and vests in the heirs or assigns of such deceased patentee. R. S. (U. S.) 1878, sec. 2448, p. 448; *Phillips v. Sherman*, 36 Ala. 192. (3) The rule number 41, page 8, of the commissioner of the general land office, was within the power and authority of such officer to make, and under said rule Tobler or his heirs or assigns only, had the right to make substitution for the canceled warrant, and the substitution made therefor by Perlina Tunstall in the name of Jacob Tobler did not give her any title, legal or equitable, to the land. *Hussman v. Berry*, Decisions of Dept. of Int. relating to Public Land, vol. 6, p. 375, July, 1887 to June, 1888. (4) When a valid entry is withheld from patent on account of the objectionable character of the warrant located thereon, the parties in interest may procure the issue of a patent by filing in the local office an acceptable substitute for said warrant; but the patent in such case must issue in the name of the original locator, and the title will pass the owner of the land under such location, and as to who is the owner is a matter for determination by the courts. *Hussman v. Berry, supra.* (5) The land officers having decided that the entry of Jacob Tobler was valid, and the title passed from the United States to him, and the payment of the money in lieu of the warrant must be for the benefit of the title passed to him, this decision is binding and will not be reviewed by a state court. *Wiggins v. Guier*, 13 La. Ann. 356; *State v. Bachelder*, 5 Minn. 223; *Mitchell v. Cobb*, 13

Ala. 137. (6) The rules and regulations of the land office control in the entry of land, and state courts will not interfere with these rules. *Randall v. Edert*, 7 Minn. 450. (7) Where the government has authority to issue a patent, and decides to whom it shall issue, and the same is not void on its face, it can not be assaulted. *Phillips v. Sherman*, 36 Ala. 192. (8) The officers of the land department passed on the alleged fraud with all the facts before them, and decided in favor of the Tobler entry being valid, and that decision should stand. *Lee v. Johnson*, 116 U. S. 48; *U. S. v. Mining Co.*, 129 U. S. 579; *Hastings v. Railroad*, 132 U. S. 357; *Culver v. Uthe*, 133 U. S. 659. (9) When the warrant was located by Tobler, this act segregated the tract from the public domain, and it could never be entered by any other person until the entry was canceled. *Hastings v. Railroad*, 132 U. S. 357; *Culver v. Uthe*, 133 U. S. 659.

*Olden & Orr* for respondent.

(1) In an action of ejectment the plaintiff must recover, if at all, upon the strength of his own title, and not on the weakness of his adversary's. *Duncan v. Able*, 99 Mo. 188; *Foster v. Evans*, 51 Mo. 39. (2) And such title must be a legal one, and not a mere equity. R. S. 1889, sec. 4626; *Pickett v. Jones*, 63 Mo. 195. (3) A patent or other conveyance to a grantee not *in esse* is a nullity, and the provisions of United States Revised Statutes, 1878, section 2448, do not change this rule, except in favor of heirs where the ancestor was legally entitled to the patent. *Thomas v. Wyatt*, 25 Mo. 25; *Collins v. Brannin*, 1 Mo. 384; *McArthur v. Dun*, 1 Wall. 439; *Nirwauger v. Saunders*, 7 How. 270; *United States v. Southern Colorado, etc., Co.*, 18 Fed. Rep. 277; 3 Wash. Real Prop., p. 262,

sec. 567; Tiedeman on Real Prop., sec. 797. (4) And when property is conveyed to one for the use of another, such other must be *in esse*. Tiedeman, secs. 461–466; *Bonds v. Hickman*, 32 Cal. 202. (5) When titles emanate from the federal government, for lands lying in this state, our courts have the power to determine controversies involving the validity of such titles, in contests between private parties. *Perry v. O'Hanlan*, 11 Mo. 585. (6) Courts of equity have jurisdiction to correct mistakes, to relieve against frauds and impositions, and, in cases where it is clear that the officers of the land department have, by a mistake of the law, given to one person land which belongs to another, to give relief. *Maxwell Land-Grant* case, 121 U. S. 380; *Johnson v. Towsly*, 13 Wall. 72; *Moore v. Robbins*, 96 U. S. 530; *Marquez v. Frisbie*, 101 U. S. 573; *United States v. Atherton*, 104 U. S. 372; *Shipley v. Cowan*, 91 U. S. 330.

BARCLAY, P. J.—Plaintiff sued in ejectment for a tract of land now in the town of Mammoth Spring in Oregon county. The defendant denied many of the allegations of the petition, and then set up a special affirmative defense in the nature of a bill in equity. As that part of the answer gives important facts of the case we quote some of its statements:

"On the 1st day of June, 1860, Jacob Tobler located original warrant No. 28754 upon the land in question, and attempted to get title thereto under said warrant, and that if any title thereto emanated from the government of the United States, under said location, it was an equitable title. That from said 1st day of June, 1860, up to the present time, neither the said Jacob Tobler nor his heirs or his grantees, or their grantees, including the plaintiff, have ever been in possession of said premises or any part thereof," * * *

"The defendant and its grantors have been in the actual, open, notorious and adverse possession of the premises from March, 1880, to the present time." * * *

"On the 10th day of November, 1881, the land in question belonged to the United States government and was subject to cash entry, and on said 10th day of November, 1881, Perlina Tunstall made application to enter said land in her own name and right, but was informed by the Commissioner of the General Land Office that she could not legally do so except in the name of, and as the purchaser of the right of, Jacob Tobler. And relying upon the representation of the Commissioner of the General Land Office that the entry could be made in no other way, and believing that the patent would be issued to her in her own name, she did, on the 6th day of December, 1881, pay to the receiver of the United States land office at Ironton, Mo., the sum of $147.50, being the amount required by law to enter said land."

"That thereafter the patent was issued for said land to Jacob Tobler under a mistake of the Commissioner of the General Land Office as to the law and the facts."

"That at the time said patent was issued, the said Commissioner was ignorant of the facts concerning the cancellation of the original land warrant located by Jacob Tobler; but, on the contrary, supposed that the reason of its cancellation was on account of its having been lost and a duplicate having been issued in lieu thereof, and that Tobler was an innocent holder of said original warrant, and as such, was entitled to substitute cash for said warrant; and that Perlina Tunstall had substituted the cash for him as his agent; when in truth and in fact the assignment of the original land warrant directly from the original owner to Jacob Tobler was a forgery, and the attempted location of said

warrant by him was fraudulent and void, and that he obtained neither the legal or equitable right to said land or a right of substitution; and said land was subject to cash entry by anyone offering to purchase the same, and that the Commissioner of the General Land Office acted in violation of the rights of Perlina Tunstall when he refused to allow her to enter said land except as the purchaser of the rights of Tobler.''

"That said Perlina Tunstall paid the purchase price of said land, fully intending and believing that she would get the title thereto.''

"That defendant is her grantee and has succeeded to all of her rights in the premises.''

"That plaintiff claims title to the land in question as a purchaser of the interests of the heirs of Jacob Tobler, under the patent aforesaid, and with full knowledge of the rights and claims of Perlina Tunstall and the defendant to said premises aforesaid.'' * * *

"Whereupon defendant prays that the plaintiff be divested of all right, title or interest in, and to, said land under said patent; that said patent be corrected to conform to the law and the rights of the parties so as to convey said land to Perlina Tunstall, and that defendant be invested with the title emanating from the United States by reason of the patent aforesaid;'' etc.

The reply denied specifically most of the allegations of the answer, and charged that "the said land was entered by Jacob Tobler in the year 1857, by land warrant No. 28754; that the issuing of the patent on said entry was suspended on account of the invalidity of said warrant, but that said Tobler and his heirs and assigns had the right, under Rule 41 of Land department of the United States, contained in circular to register and receiver of United States land offices, respecting the location of bounty land warrants, to sub-

stitute cash or other acceptable payments in lieu of said canceled warrant; that said Tobler died in the year 1873, and in the year 1882 the said Perlina Tunstall represented to the officers of the United States land offices that she was the owner of said land, having acquired the rights of Jacob Tobler therein, and upon said representation she was permitted to substitute cash for said warrant, but that the same was done by her in the name of said Jacob Tobler, and the patent was issued to the said Tobler; that the representation so made by said Perlina Tunstall was not true;" *  *  * "denies that she ever made any application to enter said land except as claiming to be the owner of the same under a tax sale, which was void on account of the said Tobler being dead at the time the said judgment was rendered."

"Plaintiff admits that the said Perlina Tunstall paid the said sum of $147.50, and plaintiff tenders the same with legal interest thereon in court, to be paid to whom the court may find it is due;" etc.  Plaintiff also admitted that he claimed the land by purchase from the heirs of Jacob Tobler.

The cause was tried by the court.  Under a stipulation of counsel a good deal of testimony came in without objection, and the controversy was put practically into the shape of an agreed case, the substantial outlines of which are as follows:  In 1855, under the act of Congress of March 3d of that year, a United States bounty-land warrant, No. 28754, for 120 acres of land was issued by the Commissioner of Pensions to Nancy Burks, as widow of one of the volunteers of the war of 1812.

In 1856 she applied for, and received, a duplicate warrant, No. 28754, on proof of the loss of the original, while it was in transit by mail.  She then sold the duplicate to a Mr. Lindsay, who, at the Jackson land

office in Missouri in 1858, located the 120 acres called for by the warrant, and ultimately (in 1865) obtained a patent from the United States for the land so located.

The litigation at bar arises from an attempted location of land under the original warrant, June 1, 1860. On that day the land in suit was entered by Jacob Tobler, upon "military land warrant, No. 28754." That warrant bore a pretended assignment by Nancy Burks to Jacob Tobler, of date March 13, 1860. But by an official certificate of the commissioner of pensions written on the face of the original warrant, it appears that it was cancelled and declared void, August 1, 1863, on account of forgery in the assignment thereof.

In 1872, Jacob Tobler died, leaving a number of heirs whose interests in the land were acquired by the plaintiff by conveyances in 1890, prior to the bringing of this action.

In August, 1879, a tax suit was begun in Oregon county against Jacob Tobler (as owner) to enforce delinquent taxes (for the years 1874 to 1876 inclusive) against the land in question. In due time a judgment was rendered, and the land was sold in 1880, in that proceeding. The purchaser then conveyed his interest to Perlina Tunstall who, in 1881, applied at the U. S. land office (at Ironton, Missouri) to purchase the land in suit. Prior to the actual entry by her, the commissioner of the general land office informed her by letter that, in view of the fact that Tobler's location remained "intact," and had not been cancelled, the "present owner" of the land might, if so desired, "make substitution in accordance with section 41" of the commissioner's circular to the registers and receivers of land offices. That section reads as follows:

"Sec. 41. When a valid entry is withheld from patent on account of the objectionable character of the warrant located thereon, the parties in interest may

procure the issue of a patent by filing in the office of the district in which the lands are situated an acceptable substitute for the said warrant. The substitution must be made in the name of the original locator, and may consist of a warrant, cash, or any kind of scrip legally applicable to the class of lands embraced in the entry. Two warrants can not be substituted for the one originally located, nor will any payment be received that will destroy the identity of the entry. If a certificate of approval should be attached to the warrant, a blank form of assignment will accompany the same, which may be used in making a subsequent transfer."

In accordance with the course pointed out by the commissioner, Mrs. Tunstall paid the cash ($147.13) required to purchase the land. The following was the certificate of entry then issued to her:

"No. 44485.

"Receiver's Office, Ironton, Mo. Dec. 13, 1881.

"Received from Perlina Tunstall, of Fulton county, Arkansas, for Jacob Tobler, of Cape Girardeau county, Missouri, the sum of $147.13 being in full for the southeast fractional quarter (north of State line) of section number 5, in township number 21 north, of range number 5 west fifth prin. mer. Mo., containing 117.70 acres, at $1.25 per acre.

"Cash payment substituted under sec. 41, page 8 of circular of July 20, 1875, in lieu of military land warrant No. 28754, located on said land June 1, 1860, and originally cancelled by Com'r of Pensions Aug. 1, 1863. (See Com'r's letter "B" of Nov. 23, 1881, to H. M. Tunstall, Mammoth Springs, Arkansas.) $147.13.                    GEO. H. CRUMB, Receiver."

Afterwards, Dec. 20, 1882, a patent for the land was duly sent to Mrs. Tunstall but it was expressed to be in favor of Jacob Tobler as patentee, although it recited payment by Mrs. Tunstall "for Jacob Tobler."

Later, in response to a letter on the subject, the acting commissioner of the General Land office further explained the issue of the patent in the above indicated form:

"The receiver's receipt, dated Dec. 13, 1881, shows that you made the cash substitution under sec. 41, page 8, of the enclosed circular of instructions to registers and receivers, issued July 20, 1875. You will observe that 'substitution must be made in the name of the original locator.' Mr. Tobler not having assigned his interest in the land (so far as our records show), patent therefor issued in his name as herein stated."

It appeared further in evidence that the defendant company had duly acquired the title of Mrs. Tunstall.

The plaintiff paid the taxes on the land for the year 1869; and Mrs. Tunstall (or parties claiming in her right) paid them for the years 1880 to 1891, inclusive.

There was also evidence tending to prove that plaintiff, before acquiring the land, had notice of the said claims of Mrs. Tunstall thereto.

On the case above stated, the trial court entered the following finding and judgment for defendant (omitting merely formal matter) viz:

"The court finds that the plaintiff is not entitled to the possession of the land sued for; that Perlina Tunstall, defendant's grantor, paid the purchase price of the land sued for to the government of the United States, and became legally entitled to a patent therefor; that plaintiff holds title to said land in trust for defendants herein, with full knowledge of the claims of Perlina Tunstall, this defendant.

"It is therefore considered and adjudged by the court, that plaintiff take nothing by this suit, and that plaintiff be divested of all right, title or interest to the

premises in question; that defendant be invested with the absolute title to said premises against plaintiff or his subsequent grantees; that defendant recover of the plaintiff its costs herein.''

The plaintiff afterwards appealed in due course.

1.   There can be no doubt that our statute regulating proceedings in ejectment permits such an action as this to be maintained on ''entry or bounty-land warrant location with the register and receiver of any land office of the United States,'' as against any one not having a better title to the land claimed. (R. S. 1889, sec. 4627.)

2.   Plaintiff claims that under section 2448 (U. S. R. S. 1878) the title conveyed by the patent inured to the benefit of Tobler's heirs (notwithstanding his prior death) as though the patent had been issued in his lifetime. We shall concede, for the purposes of this case, that plaintiff stands fully invested with the same rights that Tobler, if alive, would have under the land patent; and we treat the case as if the living Tobler, himself, was the plaintiff.

3.   Under the act of Congress of 1860, in force when the duplicate warrant was issued, the ''original warrant, in whoseever hands it may be, shall be deemed and held to be null and void, and the assignment thereof, if any there be, fraudulent; and no patent shall ever issue for any land located therewith, unless such presumption of fraud in the assignment be removed by due proof that the same was executed by the warrantee in good faith and for a valuable consideration.'' U. S. R. S., 1878, sec. 2441.

No such proof as the lines last above quoted suggest was offered in the case at bar. So the original warrant was plainly void when Tobler undertook to locate this land under it.

But plaintiff insists that the entry was valid, even though the warrant on which it was based was void, and despite the forgery of the assignment.

Plaintiff contends that Tobler or his heirs might, at any time, substitute cash, or a good warrant, for the bad one, on which the entry was founded. This right is asserted under section 41 of the commissioner's circular already quoted.

Whatever rights Tobler may have had to make such substitution, before another entry was made for the purchase of the same land from the government, can that right properly be held to continue so as to keep his entry good for all time, and as against every other intending purchaser of the land? From 1863, when the first warrant was cancelled for forgery, until 1881, when Mrs. Tunstall began steps to enter and acquire the land on her own account, nothing was done by Tobler, or by any one in his interest, toward paying for the land under the location by him. At the time she applied to enter the land, the officers of the land department insisted on receiving her payment as if made under the Tobler entry; and afterwards they issued the patent in his name. But there is no dispute as to the fact that she furnished the entire purchase price for the land. The plaintiff now offers to repay that price; but the difficulty in carrying out that program is that defendant has acquired rights as purchaser meanwhile, that can not be divested in that manner.

The section of the federal statutes first above cited (sec. 2441) forbade the issue of any patent to Tobler on the original land warrant, in the circumstances shown in this case. After (if not before) the warrant itself was cancelled, Tobler's supposed entry formed no real obstacle to the purchase of the land by any other person, who paid the required price and otherwise conformed to the law. The patent should have

been issued to Mrs. Tunstall. But, as she furnished the full consideration and the other party is before the court, there is no difficulty in giving the appropriate relief which the facts demand. Had the land been purchased in the name of Tobler himself (the consideration being wholly furnished by Mrs. Tunstall) she could enforce in equity the trust which arises from those facts in the absence of anything shown to indicate a different intent of the parties. That the muniment of title is a government patent for land does not prevent the application of that rule of equity and justice. *Johnson v. Towsley* (1871), 13 Wall. 72.

The trial court found as a fact that plaintiff had full notice of Mrs. Tunstall's claims. In equity, she or her grantee, the defendant, is entitled to the beneficial ownership of the land and to have the bare legal title of the Tobler heirs divested and decreed to the defendant. That is exactly what the learned trial court did. We think the judgment was right and should be affirmed. It is so ordered. MACFARLANE, ROBINSON, and BRACE, JJ., concur.